## THE PEOPLE vs. BELSHAZAR SMITH.

A tenant who sets fire to, and burns a barn owned by another person, but of which such tenant is in the actual possesion, cannot be convicted of arson under 2 R. S. 667, § 4.

A mere cropper, taking land on shares, with a right to secure his crops in the barn on the premises, has no *estate* in the barn nor such possession, as to defeat an indictment against him for arson in burning such barn.

In such case it is proper to allege in the indictment, that the barn burnt was the barn of the landlord.

The case of *People* v. *Gates*, 15 Wend. 159, commented on and explained.

Where the admissions of a prisoner are objected to as having been obtained by improper inducements, the proper question is, whether the inducement held out to the prisoner was calculated to make his confession an untrue one.

*Saratoga General Term, December*, 1848.—The facts are stated in the opinion of the court.

By the Court, WILLARD, Justice.—The prisoner was indicted at the Court of Oyer and Terminer for Rensselaer county, in September last, for arson in the third degree. The indictment charged, that on the 10th day of August last, at Sandlake, in said county, about the hour of 12 o'clock in the day-time, he feloniously, unlawfully, wilfully and maliciously did set fire to and burn a certain barn of one Barney U. Barringer, there situate, with intent thereby then and there to injure the said Barney, against the form of the statute, &c., and against the peace, &c. There was another count substantially like the first.

The prisoner was found guilty by the jury, and sentenced to the state prison in Clinton county.

The case comes before us on a bill of exceptions, taken on the trial to the ruling of the Court of Oyer and Terminer.

The barn which was burnt by the prisoner, was situated on a farm of the prosecutor, in Sandlake, on which farm the prisoner at that time resided, working the farm on shares. He occupied the barn as a place of deposit for the crops raised on the place. Barringer testified that "the prisoner went on the farm in April last; that the agreement between him and the prisoner was, that he, the prisoner, was to work the farm, and give him half the produce, and that if he, the prisoner, became intoxicated, he should quit the .premises immediately, and forfeit every thing." He also testified, that before the fire on the same day, he met the prisoner about two miles from the barn, and had some difficulty with him; that he took away from him the team which the prisoner used on the farm, and told him he must quit the premises. There was above two hundred dollars' worth of hay and grain in the barn when it was burnt.

It was insisted by the prisoner's counsel, that the indictment could not be supported, because it charged the burning of the barn of Barney U. Barringer, whereas the proof showed that it was, at the time of the burning, the barn of the prisoner, and was in his occupancy and possession. The court overruled the objection, and decided that the prisoner and the prosecutor were tenants in common of the barn, and that the possession of Smith, the prisoner, should be considered the possession of Barringer. The prisoner's counsel excepted.

If, on the facts proved, Barringer, and not the prisoner, ought to be considered as in possession of the barn, for the purpose of maintaining the indictment, it is immaterial whether the reason assigned by the court be the true one or not. It is decided by this court, in the *People* v. *Gates*, 15 Wend. 159, that the 4th section of article 1, title 2, of chapter 1, of the 4th part of R. S., (2 R. S. 667,) which makes it felony, wilfully to set fire to and *burn a barn*, must be understood in connection with other sections in the same article, and the common law, and therefore to apply only to the wilful burning of the barn *of another*—such is conceded to be the law. If, then, the prisoner was, at the time of the burning, in possession of the barn, in legal contemplation he should have been acquitted, because the proof did not support the indictment, unless Barringer can be treated as the owner and possessor of the barn.

It becomes necessary, therefore, to ascertain what estate the prisoner had in the barn. With regard to a dwelling-house, it has been held, that a mere residence in a house, without any *interest* therein, will not prevent it from being considered as the house of *another*, as where the prisoner was a poor man maintained by a parish, and had some time before the commission of the crime been put by the parish officers to live in the house with which he was charged with burning, and was resident therein with his family, at the time of the act being committed, having the sole possession and occupation of it, but without payment of any rent; all the judges held, that it could not be considered as *his* house, and that he was properly convicted of the arson. (2 Russell on Crimes, 551; Gowen's Case, 1786; 2 East. P. C. 21, § 6, p. 1027; Rickman's Case, ibid, § 11, p. 1034.) There the prisoner had the *actual* possession, in fact, but no interest or estate in the premises. All the. cases cited by Chief Justice Savage, in the *People* v. *Gates, supra*, in which the building was treated as that of *another* than the owner of the soil and freehold, are cases where the occupant held as *tenant under a lease*. Such was Holmes's case, Breeme's case, and Pedley's case. In Holmes's case, it is said in Foster, 115, that Holmes had the possession by legal title, and during the continuance of his lease, could maintain his possession against all the world; and section 1, H. P. C. 568, to the same effect, 2 Russell on Crimes, 550, and note (*u*,) where the cases are collected.

The prisoner had no lease of the premises on which the barn stood. He held at the will of his landlord, being liable to be put off if he became intoxicated, and to forfeit everything. The highest interest he could be said to have, was that of a mere cropper. 4 Kent's Com. 95; *Bishop* v. *Doty*,

1 Wendell, 37, show that the possession is in the landlord. This court in *Bradish* v. *Schenck*, 8 J. R. 151, decided that letting land upon shares for a single crop does not amount to a lease of the land, and the owner alone can bring tresspass. And in *Stuyvesant* v. *Dunham*, 9 J. R., 61, the same court decided that a party must have the actual and lawful possession of real property, to enable him to maintain trespass. Had a stranger entered and destroyed the prisoner's crops, trespass might have been maintained by Barringer, according to *Bradish* v. *Schenck;* and which action could not be maintained, unless Barringer can be treated as in possession. It is clear, the courts have not considered the relation between the owner of a freehold, and a tenant working on shares for a single crop, as maintaining the relation of landlord and tenant, in the proper sense of those terms. A lessor cannot maintain trespass against a stranger, while there is a tenant in possession under a lease. (*Campbell* v. *Arnold*, 1 J. R., 511.) It is otherwise, it has been shown, with respect to a mere cropper. Our courts have, in some instances, treated a cropper as tenant in common with his landlord in the crop. It was so said in *Bradish* v. *Schenck, supra*. But this doctrine has not been universally recognized. In the *State* v. *Gray*, 1 Hill, S. C. Reports, 364, it was ruled that one entitled to receive a share of a crop for his services, is not a joint tenant, or tenant in common with his employer, and that he commits larceny in stealing a part.

I think the prisoner had no estate in or legal possession of the barn. The ownership and possession, for every purpose, was in Barringer. The prisoner had a mere charge of the barn, as a servant, with perhaps a right to store his part of the crops therein, along with the share of Barringer. Admitting that they were tenants in common of the crops after they were harvested, and before division, according to *Bradish* v. *Schenck*, it does not follow that the prisoner had any such *estate* in the barn as would enable us to call it *his barn*. He paid no rent for it. He had no right to let any other person into possession. He could not maintain trespass against Barringer for entering on the premises. If a trespass had been committed upon the barn, Barringer could have sustained an action for it. The barn, therefore, was rightly laid as *Barringer's*, and the court of Oyer and Terminer committed no error prejudicial to the prisoner in overruling his objection.

The next exception is to the decision of the court in admitting evidence of the confession of the prisoner, after what passed between him and Howard, the constable. It seems that the prisoner was arrested at

the fire by Howard, a constable; and while on his way to Sliter's, where the examination was to take place, the prisoner said to the constable, "I will give you ten dollars, if you will get me clear." Howard told the prisoner that "if he burned the barn, he had better tell him of it." Sliter testified that when Howard arrived at his house with the prisoner, he, Sliter, said to the prisoner, "You have been burning the barn, have you?" The prisoner replied, "Yes." He asked him what he did it for, and the prisoner said he did not know. The prisoner's counsel insisted that this evidence should be stricken out as incompetent, on the ground that it was obtained after inducements had been held out to the prisoner by Howard, as before stated. The court refused to strike it out, and submitted the evidence to the jury. To this the prisoner's counsel excepted.

The object of the rule relating to the exclusion of confessions, is to exclude all confessions which may have been procured by the prisoner being led to suppose that it would be better for him to admit himself to be guilty of an offence which he really never committed—per Littledale in *Rex* v. *Court*, 7 C. & P., 486. In determining, therefore, whether a confession be admissible or not, the only proper question is, whether the inducement held out to the prisoner was calculated to make his confession an untrue one—per Coleridge J., in *Rex* v. *Thomas*, 7 C. & P., 345. Both these cases are cited with approbation in Russell on Crimes, 2 vol., 826. It follows that if a person advise the prisoner to be sure to tell the truth, and he then makes a statement, such statement is admissible, on the ground that such advice cannot be supposed to induce the prisoner to confess that he is guilty of a crime of which he is really innocent. (2 Russell on Crimes, 846.)

In the present case, there was no advice to the prisoner to make a general confession; certainly none to make a confession that was untrue. The prisoner offered to give the constable ten dollars if he would get him clear. This proceeded from the prisoner voluntarily, and was the introduction of what followed. The constable said, "*if you burnt* the barn you had better tell *me* of it." He however did not tell Howard of it; but the confession was responsive to the question of Sliter, who it is not pretended held out any inducement. This case is distinguishable from *The People* v. *Ward*, 15 Wend., 231. In that case there was an unqualified inducement held out by the committing magistrate, that it would be better for the prisoner to make a full confession. We think the court committed no error in receiving the evidence, and in refusing to strike it out. The other questions as to recalling a witness, and holding the cause open till

other witnesses might be sent for, were questions addressed to the discretion of the court; and the decision, if wrong, cannot be corrected on bill of exceptions. We see no reason, however, to doubt the correctness of the decisions of the court on all those questions.

The motion for a new trial must be denied.